## The State *versus* Justus C. Keene.

Where a party to a suit, on the trial thereof, presents himself as a witness in support of the charges against the adverse party on his account book, and voluntarily takes the general oath, to tell the truth, the whole truth, and nothing but the truth, legally administered, instead of the more restricted oath, to make just and true answers to such questions as shall be asked by the Court or by the order thereof, and testifies untruly, wittingly and willingly, to matters material and legitimately derivable from him, he will come within the purview of Rev. Stat. c. 158, § 1, and may be convicted of perjury.

And if the trial is before referees, duly authorized in pursuance of Rev. Stat. c. 138, to determine the controversy between the parties, and a party there testifies falsely as to such matters as might legally be drawn from him at common law, he will be liable to the same punishment, as if the oath had been administered in a court of common law jurisdiction.

If the indictment alleges, that the false testimony of the accused was in reference to whether it was his book of original entries of his daily charges; whether the charges therein were or were not copied into it from another book; and whether, in general terms, the account had not been settled on such other book; it is not necessary to specify the particular items of the account to which the testimony related.

It is not necessary, that the indictment should allege that there was a final determination of the controversy by the referees. It is sufficient, if it be alleged that they proceeded to hear the parties, and that the false testimony was given in a due course of proceeding before them.

No copy of the indictment was received by the Reporter. The objections to the indictment, made by the counsel for Keene, appear in the opinion of the Court.

*Wells* and *Sweat,* in their argument for Keene, cited Rev. Stat. c. 158, and c. 133; 12 Mass. R. 274; 11 English Com. L. Rep. 494; 2 Russ. on Cr. 521, 533, 541; 3 Stark. Ev. 1144.

*Moor,* Att'y Gen. argued for the State, citing 2 Russ. on Cr. 522; Rev. Stat. c. 158, § 1; 2 Mass. R. 217; 1 Greenl. Ev. 138; 2 Pick. 65; 1 Fairf. 9; 1 Greenl. Ev. § 424; 10 Pick. 135; 18 Maine R. 117; Chitty's Cr. 307.

The opinion of the Court was drawn up by

WHITMAN C. J. — The indictment against the defendant contains an accusation of the crime of perjury, alleged to have

been committed before referees, authorized in pursuance of the R. S. ch. 138, to determine a controversy between the defendant and one Stevens. To the indictment the defendant demurs generally. The first ground of exception taken to it is, that the oath set forth, as having been administered to the defendant, was to tell the truth, the whole truth and nothing but the truth ; whereas, it is alleged, it should have been only to make true answers, &c. The allegation in the indictment is, that the defendant presented himself as a witness in support of his account, there exhibited, against the adverse party, and was sworn generally to tell the truth, &c. There is no statutory provision as to the oath to be administered in such cases. The practice to allow parties to become witnesses in support of their book accounts, has, in many of the United States, been of long standing, and may now be regarded as a part of their common law. In Massachusetts and Maine, in particular, the usage may be regarded as having existed from the earliest settlement of the country. The practice, however, has, by judicial determinations, been modified and defined, so as to obviate, as far as might be practicable, the danger of imposition, and the perversion of justice.

Before a party can be admitted to testify, in reference to his book accounts, his book may be required by the adverse party, to be submitted to the inspection of the Court, who are to determine whether its appearance is such as to render it proper to admit him to testify at all. It must appear to be free from indications unfavorable to its fairness. It must purport to contain entries made daily, as the occasion may have required, of the items of his accounts, with the opposite party at least, if not with different individuals. 1 Greenl. Ev. note to § 118. In exercising this species of discretion it is often necessary for the Court to have reference to the habits, course of business, and the capacity of the individual to keep accounts. A merchant would be expected to have books very differently kept from those of handicraft mechanics or day laborers. The Court being thus satisfied of the propriety of admitting a party to testify, it has been usual to admit him to what has been

called his suppletory oath, viz : to make true answers, &c., and thereupon to testify that his book, so produced, contained the original entries of the items, charged against his adversary ; that those entries were made at or about the times they respectively bear date ; and that the articles were then delivered, or the work and labor then performed ; and that they have never been paid for. Greenl. Ev. before cited, and cases there referred to.

The practice, without doubt, in Massachusetts and Maine, has been to administer an oath, in such cases, merely to make true answers to such questions as shall be asked by the Court, or the order thereof, as in the case of the *voire dire* to a witness, supposed not to be free from interest in the event of a suit. And, in the case of such witnesses, the practice of administering the *voire dire* has fallen very much into disuse. The general oath is often administered to them, and inquiries are made of them, the same as if under the more appropriate oath, for the purpose of ascertaining whether they are interested or not. If indicted for perjury, in reference to such disclosures, it would not be competent for them to object, that the appropriate oath had not been administered to them ; for the general oath would be considered as embracing the obligation to speak the truth, as to their interests in a suit, the same as if sworn in the more limited form. Indeed, it is not uncommon to administer an oath generally, when a restricted inquiry only would be admissible ; as in the familiar case of attorneys, and those who are privileged from answering questions tending to their crimination. And, in cases in which parties may be admissible to testify in reference to their book accounts, it may well be doubted, whether the general oath might not with more propriety be administered, for the adverse party has the right to a rigorous cross-examination in reference to the account, and books, of the party producing them. Either party might, perhaps, be allowed to object to the administration of the general oath, or might insist on confining the testimony to the subject of the account and books. But if neither party made any objection to the administering of the oath in general

State *v.* Keene.

terms, and the examination be such as would be proper, under the more restricted and usual form, it is difficult to perceive what good reason there could be for allowing a party, taking the oath voluntarily in general terms, to object to his liability to the imputation of perjury, if he should wilfully testify untruly. Surely the general oath would impose upon him, according to its terms, all the obligation that would be included by taking the oath in the more restricted form. Whether the Court might, or might not, deem it more proper in all such cases to administer the oath, as usual to disinterested witnesses, restricting the examination to matters proper to be inquired into; we, on the whole, can have no doubt, if a party in such cases, voluntarily takes the general oath, and testifies untruly, wittingly and willingly, to matters legitimately derivable from him, that he may well be deemed to come within the purview of the Rev. Stat. ch. 158, and be convicted of perjury.

But the proceeding, in which the alleged perjury occurred, was not in strictness at common law : and in *Fuller* v. *Wheelock*, 10 Pick. 135, it was remarked by the Court, in delivering their opinion, that there is no doubt that referees may receive the testimony of incompetent witnesses, if in their judgment the justice of the case should require it. This, however, it is argued, was but an *obiter dictum.* But it is in consonance with the generally received opinion, that referees, not restricted by the terms of the submission, are not restricted by the rules of evidence obligatory in proceedings at common law. And it may be inferred, at least, that, where a party offers himself as a witness before referees, and is sworn generally to tell the truth, without objection on either side, he would be so far a legal witness, that any testimony which he might voluntarily give, knowing it to be false, should be deemed perjury, but more especially should such be the case if he were no otherwise to testify, than to such matters as might legally be drawn from him at common law ; and the testimony in question was of this latter class.

It is objected, secondly, that the items of the account, exhibited by the defendant, should have been specified in the

indictment. But the testimony, relative to which the alleged falsehood existed, was not as to the items particularly, but as to the matter offered in evidence, tending generally to establish their correctness in the gross. It was in reference to the book in which the items were contained, viz. whether it was the defendant's book of original entries of his daily charges; whether the charges therein were or were not copied into it from another book; and whether, in general terms, the account had not been settled on such other book. This objection therefore is without foundation.

It is not essential to the maintenance of the indictment, as urged in argument, that there should appear in it to have been any final determination by the referees. It is sufficient that it is alleged, that they proceeded to hear the parties, and that the false testimony was given in a due course of proceeding before them. *The demurrer is overruled.*